**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *Plaintiff*, v. **$72,378.00 IN UNITED STATES CURRENCY,** *Defendant in Rem.* | Civil Action No. 16-8425<br><br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter comes before the Court on Plaintiff United States of America's ("Plaintiff" or "the Government") motion for the entry of default judgment and final order of forfeiture of a total of $72,378.00 in U.S. currency ("Defendant Property") pursuant to Federal Rule of Civil Procedure 55(b). ECF No. 5. For the reasons set forth herein, the motion is **GRANTED**.

## I. BACKGROUND

On or about June 20, 2016, Task Force Officers from the DEA Newark Airport Group/Task Force ("DEA officers") were monitoring and speaking with passengers scheduled to board United Airlines Flight 1120, at Gate 136 in Terminal C of Newark Liberty International Airport located in Elizabeth, New Jersey (hereinafter "Airport"), which was bound for San Francisco, California. Compl. ¶ 7. DEA officers observed and approached a man, subsequently identified as George Y. Opoku Jr. (hereinafter "Opoku"), traveling with two pieces of carry-on luggage. Id. ¶ 8. The officers identified themselves to Opoku, who agreed to speak with them. Id. Officers asked Opoku for his boarding pass, identification, and flight itinerary, which Opoku provided. Id. During the

1

interview the officers asked Opoku whether he was carrying any large amounts of United States currency (hereinafter, "U.S. currency"), Opoku stated that he had approximately $70,000 in U.S. currency in his carry-on luggage and subsequently provided verbal consent to search his carry-on luggage. Id. ¶ 9. During the consensual search of the two carry-ons conducted in front of Opoku, DEA officers located a large amount of U.S. currency wrapped in rubbers bands within the carry-on luggage. Id.

DEA officers continued to interview Opoku regarding his travel and the U.S. Currency, during which Opoku stated he is part owner of Ibban Auto Brokers, LLC, with his partner Kunle Banjo, a Nigerian national. Id. ¶ 10. Opoku stated he was traveling to San Francisco for a one-day business trip, for the purpose of purchasing a vehicle at Manheim Auto Auction in Riverside, California. Id. When DEA officers asked Opoku about the U.S. currency they located in his carry-on luggage, he stated the currency was not retrieved from a bank and instead represents proceeds from the sale of vehicles at Ibban Auto and belongs to him as his business partner. Id. ¶ 11. Opoku further stated he could not remember whether he filed a 2015 Income Tax return and that while in California he was going to stay with his friend, Jade Ablauf, even though he initially stated he was going to California on a one-day business trip. Id. Opoku later changed his story and stated he is not half owner of Ibban Auto but has worked there for the past two years. Id.

Based on the inconsistent statements made by Opoku and insufficient information regarding the ownership and source of the defendant property, either whole or in part, the DEA officers seized the Defendant Property for further investigation and under the suspicion that it was proceeds from illicit drug proceeds. Id. ¶ 12. Opoku was told he would receive a letter from the DEA regarding the seizure and forfeiture of the defendant property and that if he chose to contest the seizure and forfeiture of the defendant property he would need to provide proofs supporting

the statements he made to the DEA officers.  Id.  Opoku proceeded to walk away and not board his scheduled flight.  Id.  It was subsequently determined that a total of $72,378.00 in U.S. currency was seized from Opoku.  Id.

The U.S. currency seized from Opoku's carry-on luggage consisted of the following denominations of U.S. currency: 121 $100 dollar bills, 168 $50 dollars bills, 2502 $20 dollars bills, 175 $10 dollar bills, 17 $5 dollars bills, and 3 $1 dollar bills.  Id. ¶ 13.  These denominations of U.S. currency are consistent with monies received from the sale of controlled substances.  Id.

On or about June 27, 2016, DEA officers met with and interviewed Michael Yelverton and Ibikunle Banjo at Ibban Auto, LLC, located at 1139 East Broad Street, Elizabeth, New Jersey.  Id. ¶ 15.  The officers questioned Yelverton and Banjo in reference to Opoku and the seizure of the defendant currency.  Id.  During the interview, Yelverton stated that he started working at Ibban about two months prior and does not know Opoku.  Id.  Banjo stated he is the owner of Ibban Auto and that Opoku was as employee for about six months in 2013.  Id.  Banjo told officers that the last time he spoke to Opoku was about one month ago and he did not loan or give Opoku any money.  Id.  Banjo further stated he does not purchase auctioned vehicles in California to sell at his Ibban Auto used car dealership.  Id.

The DEA initiated administrative forfeiture proceedings against the Defendant in rem.  Id. ¶ 16.  On or about August 16, 2016, Opoku, through counsel, filed an administrative claim with the DEA contesting the forfeiture of the Defendant Property.  Id.  The claim consisted of a Seized Asset Claim Form and an Affidavit in Support of Return of Personal Property, signed under penalty of perjury.  Id.  In the affidavit Opoku now states the following: he resides in North Brunswick, New Jersey, is in the music entertainment business as a performer and is involved in searching for new talent to produce.  Id.  Opoku further states that on June 20, 2016, he was

3

travelling to Los Angeles to attend the Black Entertainment Awards ceremony, where he alleges he was scheduled to meet with music business people. Id. Opoku states that he planned to do several business transactions and was carrying the large amount of cash to be able to get better price for services he was interested in buying, as he had done in the past. Id. Opoku states the money is from legitimate sources such as $5,000 saved from shows he had done in the northern New Jersey area, while the rest came from his sponsor and mentor, Mr. John Ferolito. Id. Opoku states that he has never been involved in illegal or wrongful activities and the money was going to be used for legitimate business purposes. Id.

According the New Jersey Department of Labor records, Opoku has not reported any wages in the state of New Jersey since reporting earnings of $7.30 in the fourth quarter of 2008. Id. ¶ 17. There are no records that indicate that Opoku has a legitimate source of income at this time. Id.

Subsequent to the seizure of the Defendant Property, an officer with the Port Authority K-9 Unit at Newark Liberty International Airport deployed his certified narcotics detection canine "Red" (hereinafter "Red") to inspect the currency which was seized from Opoku. Id. ¶ 18. Red signaled, through a distinctive set of behaviors, specifically by scratching where the currency was located, that he detected a controlled substance on the currency. Id.

Red was certified in narcotics detection on or about August 7, 2008. Id. ¶ 19. The course of study for narcotic detection for Red was to introduce the K-9 to the scents of marijuana, cocaine, heroin, ecstacy, and methamphetamine. Id. Red was able to find these narcotic substances as a result of the intense training received. Id. In the course of this training, Red and his handler were involved in approximately 150 searches for the above listed substances, and Red gave a positive indication on these searches, either by scratching, biting, or barking. Id. Masking agents such as

4

dog food, liquid soap, bacon, turkey, parmesan cheese, coffee, duct tape, chicken bones, and liverwurst, commonly used by narcotics traffickers, were used to distract narcotic detection canines. Id. Subsequently, Red was trained to detect the odor of a controlled dangerous substance on currency. Id. Among other things, Red is trained to distinguish between uncirculated currency and currency that was recently commingled with one of the five controlled substances Red is trained to detect. Id.

Since his certification in 2008, Red has completed recertification evaluations on a yearly basis. Id. ¶ 20. Prior to his deployment on June 20, 2016, to search the currency seized from Opoku's carry-on luggage, Red had last been recertified on January 11, 2016, after successfully completing a four-month training course conducted by the Port Authority Training Unit. Id.

On November 10, 2016, the Government commenced a civil judicial action for the forfeiture of the Defendant Property by filing a Verified Complaint for Forfeiture *in Rem* (the "Verified Complaint"). ECF No. 1. On or about November 15, 2016, a Warrant for Arrest *in Rem* was issued for the Defendant Property. ECF No. 2. On November 30, 2016, the Government filed with this Court a Notice of Complaint for Forfeiture *in Rem* (the "Notice of Complaint"), ECF No. 3, and sent copies of the Verified Complaint and the Notice of Complaint to Herbert McDuffy Jr., Esq., in his capacity as counsel to Opoku. Declaration of Peter Gaeta ("Gaeta Decl.") at Ex. A. The Notice of Complaint stated that any person who wished to assert an interest in and avoid forfeiture of the Defendant Property must file a conforming claim with the Clerk of the Court within the time allotted. Id. The Notice of Complaint also detailed the procedure for filing a claim and answer while stating that failure to timely file a conforming Claim, or failure to file an answer or motion, would result in the Government seeking judgment by default for the relief demanded in the Verified Complaint. The Government also posted notice of the instant forfeiture action on

its official forfeiture website, www.forfeiture.gov, for thirty consecutive days through February 23, 2018. Id.

On or about December 6, 2016, copies of the Verified Complaint and Notice of Complaint were delivered to the office of Herbert McDuffy, Jr., Esq., as counsel for potential claimant Opoku. Id. No claims or answers were filed in this action.

### I. STANDARD OF REVIEW

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred." Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008) (quotation omitted). When evaluating a motion for default judgment, courts consider (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000). Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

### II. ANALYSIS

#### A. Procedural Requirements for Civil Asset Forfeiture

Civil asset forfeiture actions *in rem* are governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") and 18 U.S.C. § 983. Under Rule G, the government must file a verified complaint that states the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the property, and venue; describes the property with reasonable particularity; states the property's location when any seizure occurred and its location when the action is filed; identifies the statute under which the forfeiture action is brought;

6

and provides sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. See Supp. R. Certain Adm. & Mar. Cl. G(2).

If the property is not real property and is already in the government's possession, custody, or control, the Clerk must issue a warrant to arrest the property before it can be seized. Id. at § 3(b). Once the arrest warrant is issued, the government may arrest the property pursuant to the warrant. Id. at § 3(c). And finally, the government must publish notice of the forfeiture action for any potential claimants that it is not aware of, and must give direct notice to any potential claimants that it is aware of. Id. at § 4. For potential claimants that the government does not know, the government must publish notice within a reasonable time after the Verified Complaint is filed, which may be satisfied by posting a notice on an official internet government forfeiture site for at least thirty consecutive days. Id. at § 4(a)(iv)(C). For potential claimants known to the government, the government must send notice of the action and a copy of the Verified Complaint "by means reasonably calculated to reach the potential claimant," including to the potential claimant directly or to his attorney. Id. at § 4(b)(iii).

To make a claim for the property and avoid potential forfeiture, a potential claimant must file a claim that conforms to Rule G(5)(a) of the Supplemental Rules and 18 U.S.C. § 983(a)(4)(A). Rule G(5)(a) provides that the potential claimant must file a claim in the court where the action is pending that identifies the specific property claimed, identifies the claimant and the claimant's interest in the property, is signed by the claimant under penalty of perjury, and is served on the government's attorney. Under 18 U.S.C. § 983(a)(4)(A), the claim must be filed no later than thirty days after the date of service of the government's Verified Complaint or no later than thirty days after the date of final publication of notice of the filing of the Verified Complaint.

### B. The Government Has Satisfied the Procedural Requirements

7

The Government has met the requirements of Rule G and 18 U.S.C. § 983. On November 10, 2016, the Government filed a Verified Complaint seeking the forfeiture of $72,378.00 in U.S. currency. The Verified Complaint asserts that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a), and *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b)(1). Compl. ¶¶ 3-4. It also describes the Defendant Property with reasonable particularity, in that it describes the amounts and form in which the money was received, as well as the location and circumstances of its seizure. Id. ¶¶ 7-13.

The Government also adequately identifies the statutory basis for this action. See Compl. ¶¶ 6. Specifically, pursuant to 18 U.S.C. § 881(a)(6), no property right exists in "moneys, . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation."

In addition, the Verified Complaint provides sufficient facts to support a reasonable belief that the Government will be able to meet its burden at trial. The Complaint details the inconsistencies in Opoku's statements regarding the origin of the Defendant Property, Opoku's lack of legitimate business, and the K-9 unit's positive signal for detection of a controlled substance on the currency. Compl. ¶¶ 7-20. Accepted as true for the purposes of this motion, see Comdyne, 908 F.2d at 1149, these facts are sufficient to establish a reasonable belief that the Government would be able to prove at trial that the Defendant Property constitutes money furnished or intended to be furnished in exchange for a controlled substance or represents proceeds traceable to an exchange for a controlled substance in violation of 21 U.S.C. § 801, *et seq*.

Finally, the Government followed the proper procedures after filing the Verified Complaint. On November 15, 2016, the Government requested and received a warrant to arrest

8

the Defendant Property. On November 30, 2016, the Government posted a Notice of Verified Complaint for Forfeiture *in Rem* on the docket. The Notice stated that any person who wished to assert an interest in the Defendant Property must file a verified claim within thirty-five days after the Notice was sent or the date of delivery, if personally served. The Government also successfully mailed copies of the Verified Complaint and Notice to Opoku's attorney, and made reasonable efforts to deliver the documents to Opoku. And finally, the Government published the Notice on its official forfeiture website, www.forfeiture.gov, for thirty consecutive days.

### C. No Potential Claimant Has Filed a Claim

The requirement that a potential claimant file a verified claim "'is no mere procedural technicality.'" United States v. $487,825.000 in U.S. Currency, 484 F.3d 662, 665 (3d Cir. 2007), as amended (May 14, 2007) (quoting United States v. $23,000 in U.S. Currency, 356 F.3d 157, 163 (1st Cir. 2004)). "Because of the important interests served by requiring a verified statement, district courts are entitled to insist upon procedural regularity." Id. There have been no claims filed for the Defendant Property in this matter. As a claim must be filed no later than thirty days after the date of service of the government's Verified Complaint or no later than thirty days after the date of final publication of notice of the filing of the Verified Complaint, the time period to file a claim has expired. See 18 U.S.C. § 983(a)(4)(A).

### D. Default Judgment is Appropriate

Default judgment is appropriate under the circumstances. As an initial matter, the Government is entitled to default judgment because no potential claimants have filed a verified claim or valid answer to the Verified Complaint. $487,825.000, 484 F.3d at 664; United States v. Assorted Jewelry Valued at $13,430.00, No. 11-0777, 2013 WL 775542, at *2 (D.N.J. Feb. 28, 2013). As the Government posted the forfeiture notice on its website and made reasonable efforts

9

to directly notify any known potential claimants, any potential claimants bear the responsibility for their failure to file a verified claim.  United States v. $75,000 in U.S. Currency, No. 14-7633, 2015 WL 3409468, at *4 (D.N.J. May 27, 2015).  Moreover, the Government would suffer prejudice if default judgment and final order of forfeiture were denied, because it does not have any alternate remedy against the Defendant Property.  United States v. $16,010.00 in U.S. Currency, No. 11-945, 2011 WL 2746338, at *6 (D.N.J. July 13, 2011).  Thus, the Court will enter default judgment in favor of the Government and will order forfeiture of the Defendant Property.

**III.  CONCLUSION**

For the reasons set forth above, Plaintiff's motion for final judgment by default against Defendant and for a final order of forfeiture is **GRANTED**.  No right, title, or interest in the Defendant Property shall exist in any other party.  An appropriate Order accompanies this Opinion.

**Dated: December 20, 2017**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States District Judge**